FILED
CLERKS OFFICE
2005 MAR 18 P 12:08
U.S. DISTRICT COURT
DISTRICT OF MASS.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

04-CV-12033-PBS

CHARLES RAMPINO,
PETITIONER,

V.

BERNARD BRADY,
RESPONDENT.

## MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S OPPOSITION TO MOTION TO DISMISS

The Petitioner, Charles Rampino, submitts this memorandum of law in support of his Opposition to the respondent's motion to dimiss.

The petitioner was awarded 1500 days of good-time credits under a Massachusetts Statute, said credits have been arbitrarily revoked by the Respondent without Due Process of Law. The petitioner has a protected liberty interest in said credits and due to such liberty interest, this Federal Court has standing to hear and decide this matter.

The United States Supreme Court recognized and noted that the Massachusetts Statutes at issue in this case "creates a liberty interest" that is protected by the due process guarantees of the United States Constitution. Id at 453, Superintendent, MCI Walpole v. Hill, 472 US 445(1985).

As will clearly be shown below, the petitioner has a cognizable federal issue in his good-time credits that cannot be revoked without due process of law.

GOOD-TIME CREDITS AWARDED AS A MATTER OF RIGHT UNDER STATE STATUTE CREATES LIBERTY INTEREST PROTECTED BY THE 14TH AMENDMENT, THUS WARRANTING FEDERAL HABEAS RELIEF WHEN SUCH LIBERTY INTEREST IS REVOKED WITHOUT DUE PROCESS OF LAW.

In Wolff v. McDonnell, 418 US 539 (1974), the High Court held that a state-created right to good-time credit for satisfactory behavior, that is forfeitable only for serious misbehavior is a sufficient liberty interest within the Fourteenth Amendment to entitle the inmate to "those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrograted." Id at 557. In Superintendent, MCI Walpole v. Hill, 472 US 445 (1985), the High Court noted that "Massachusetts law creates a liberty interest in good-time credits"... the High Court stated "where a prisoner has a liberty interest in good-time credits, the loss of such credits threatens his prospective freedom from confinement by extending the length of imprisonment. Thus the inmate has a strong interest in assuring that the loss of good-time credits is not imposed arbitrarily...the Court has recognized that a governmental decision resulting in the loss of an important liberty interest violates due process if the decision is not supported by any evidence." Id at 453-455. "There is no iron curtain drawn between the Constitution and the prisons of this country"...Prisoner's, therefore "may not be deprived of life, liberty, or property without due process of law." Wolff supra at 556 and cases cited therein. If a State deprives a state prisoner of good-time already earned, then the federal habeas statute pertaining to persons held in state custody would provide the [exclusive] avenue for a state prisoner seeking federal relief; Montgomery v. Anderson, C.A. 7 (Ind.)2001, 262 F3d. 641, Rehearing Denied. See also Preiser v. Rodriguez, 411 US 475, 500(1973)(when a state prisoner is challenging the very fact or duration of his imprisonment, his sole federal remedy is a writ of habeas corpus)

AVAILABILITY OF FEDERAL HABEAS
CORPUS TO PERSONS IN STATE CUSTODY.

1. The "Custody" Requirement

The federal courts are empowered by 28 U.S.C. § 2254(a) to inquire into the legality of custody of a person detained "pursuant to the judgment of a State court." The sole ground of inquiry is whether the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." Id.

2. Cognizable Claims

Pursuant to 28 U.S.C. § 2254, a writ of habeas corpus is available on the basis that the petituoner's conviction or sentence violated the Constitution, laws, or treaties of the United States. In the seminal case of Brown v. Allen, 344 US 443,458(1953), the Supreme Court held that all federal constitutional rights that have been incorporated through the Fourteenth Amendment Due Process Clause and thereby made applicable to the states are cognizable on federal habeas corpus and that a petitioner can press such claims even if they has been fully adjudicated in the state courts.

It is true that federal habeas review is generally not available to correct errors of state law. See, e.g., Estelle v. McGuire, 502 US 62, 71-72(1991);Gerlaugh v. Stewart, 129 F.3d 1027,1032 (9th Cir.1997),cert denied, 119S.Ct237(1998). Where the state creates a liberty interest, however, it is not correct to say that the question is "merely a mattter of state procedural law." Hicks v. Oklahoma, 447 US 343,346(1980). "[T]he failure of a state to abide by its own statutory commands may implicate a liberty interest proteced by the Fourteenth Amendment against arbitrary deprivation by a state." Fetterly v. Paskett, 997 F.2d 1295,1300(9th Cir.1993), cert. denied, 513 US 914(1994); Accord Lambright v. Stewart, 167 F.3d 477,482(9th Cir.1999); Ballard v. Estelle, 937 F.2d 453,456(9th Cir.1991). Moreover, federal due process may violated where the State introduces evidence that so "fatally infects the proceedings as to render them fundamentally unfair." Jammall v. Van de Kamp, 926 F.2d 918,919(9th Cir.!991). See generally Dowling v. United States, 493 US 342,352(1990)("We...have defined the category of infractions that violate 'fundamental fairness' very narrowly.").

COGNIZABLE ISSUES

Federal Courts may entertain a state prisoner's petition for habeas relief only on the grounds that the prisoner's confinement violates the Constitution, laws, or treaties of the United States; 28 USC §2241 (c)(3) (2000); 28 USC 2254 (a)(2000). A violation of state law is not cognizable in a federal habeas proceeding unless the violation is of a constitutional magnitude; Davis v. Strack, 270 F3d. 111,132 (2d Cir. 2001)(federal habeas relief granted when petitioner entitled to justification charge under New York law and error was of immense importance). Habeas relief will not be granted for any claim adjudicated on the merits in state court unless the decision was (1) "contrary to, or involved an unreasonable application of" federal law clearly established by the Supreme Court; 28 USC §2254 (d)(1) (2000). In Williams v. Taylor, the Supreme Court found that "contrary to" means that a state court arrives at a conclusion on a question of law that is opposite to that reached by the Supreme Court or when confronted with materially indistinguishable facts from a Supreme Court precedent, arrives at an opposite result, 529 US 362,405 (2000). Or (2), the state court's decision was "based on an unreasonable determination of the facts." 28 USC §2254 (d)(2)(2000). In the case at bar, the petitioner firmly asserts that he has multiple "State-Created" liberty interests that cannot be arbitrarily revoked without due process of law. The Petitioner states that he has been deprived of his Good-Time credits without due process and due to such his Constitutional rights under the Fourteenth Amendment have been violated, and furthermore, the process due under Wolff v. McDonnell and cases cited therein have not been followed in revoking his Good-Time credits.

RIGHTS TO PROCEDURAL DUE PROCESS

The Fifth and Fourteenth Amendments prohibit the government from depriving an inmate of life, liberty, or property without due process of law. See U.S. Constitution Amendments V, XIV. The Due Process Clauses are designed to protect the individual against arbitrary government action. See Wolff v. McDonnell, 418 US 539,558 (1974)(citing Dent v. West Virginia, 129 US 114,123(1889); see,e.g., Sameric Corp. v. City of Philadelphia, 142 F.3d 582,590 (3d Cir.1998)(substantive due process claim requires plaintiff to prove deprivation of protected interest by arbitrary government action);Leslie v. Doyle, 125 F.3d 1132,1136 (7th Cir.1997) (prisoner retains right to be free of arbitrary and purposeless use of authority); Chambers v. Colorado Dep't of Corr. 205 F.3d 1237,1242(10th Cir.2000)(due process protections apply only when prisoner is deprived of life, liberty, or property). Analysis of procedural due process questions involves a two-part inquiry: (1) whether the state has interfered with an inmate's protected liberty or property interest, and (2) whether procedural safeguards are constitutionally sufficient to protect against unjustified deprivations. See Kentucky Dep't of Corr. v. Thompson, 490 US 454,460(1989); see e.g., Cruz v. Gomez, 202 F.3d 593,597 (2d Cir. 2000)(to state claim of denial of due process, prisoner must allege both possession of protected liberty interest and lack of requisite process before being deprived of that interest); Miller v. Lorain County Bd. of Elections, 141 F.3d 252,259 (6th Cir.1998) (procedural due process claim calls for 2-pronged inquiry into whether plaintiff had protected liberty interest and, if so, whether deprivation occurred without due process of law); Ledford v. Sullivan, 105 F.3d 354,356 (7th Cir.1997)(same); Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.,149 F.3d 971,982 (9th Cir.1998)(same); Lancaster v. Indep. Sch. Dist. No.5, 149 F.3d 1228,1234 (10th Cir.1998)(reviewing

plaintiff's due process claim requires appellate court to determine if plaintiff had protected property interest and if appropriate level of process was afforded); Brown v. Plaut, 131 F.3d 163, 169(D.C. Cir.1997)(inmate's placement in administrative segregation would violate Due Process Clause if inmate had liberty interest in avoiding segregation and inmate did not receive due process).

Protected liberty interests can be created (1) by the Due Process Clause of its own force. See Sandin v. Conner, 515 US 472, 484(1995). Such liberty interest are characterized as inherent in the Constitution. See e.g., Harper v. Young, 64 F.3d 563, 566(10th Cir. 1995)(inherent constitutional liberty interest arise when prisoner has acquired substantial freedom such that deprivation requires due process protection), aff'd, 520 US 143(1997). The Supreme Court has found several such liberty interests. See Riggins v. Nevada, 504 US 127,137(1992)(liberty interest in avoiding unwanted adminstration of antipsychotic drugs); Washington v. Harper, 494 US 210, 221-22(1990)(liberty interest in remaining free from involuntary administration of antipyschotic drug); Vitek v. Jones, 445 US 480,493(1980)(liberty interest in remaining free from involuntary commitment to mental hospital; Morrisey v. Brewer, 408 US 471,482(1972)(liberty interest in remaining free from revocation of parole); see, e.g., Domegan v. Fair, 859 F.2d 1059,1063(1st Cir.1988)(liberty interest in receiving nutrionally adequate meals); Calhoun v. New York State Div. of Parole Officers, 999 F.2d 647, 653(2d Cir.1993)(liberty interest in release upon expiration of maximum term of imprisonment); Bazzetta v. McGinnis, 286 F.3d 311,323(6th Cir. 2002) (liberty interest in visitation privileges); Piggie v. McBride, 277 F.3d 922,924 (7th Cir.2002)(liberty interest in prisoner's **good-time credits**); Espinoza v. Peterson, 283 F.3d 949,951(8th Cir.2002)(**same**). Protected liberty interest can also be created by (2) by a court order. See , e.g., Walters v. Grossheim, 990 F.2d 381,384 (8th Cir.1993)(court order mandating inmate's reinstatement to highe privilege status created liberty interest in reinstatement). cf. Smith v. Sumner, 994 F.2d 1401,

1406 (9th Cir.1993)(consent decree can create liberty interest). Protected liberty interest can also be created by (3) by a treaty. See, e.g., Bagguley v. Bush, 953 F2d. 660,662 (D.C. Cir.1991)(per curiam)(Convention on Transfer of Sentenced Persons creates no liberty interest in being transferred to home country because Convention does not limit official discretion). Last and most importantly, Protected liberty interest can be created by (4) States through statutes or regulations. See Sandin, 515 US at 483-84; see, e.g., Friedl v. City of New York, 210 F.3d 79,82,84 (2d Circ 2000)(state statute confers liberty interest in continued participation in work release program; therefore, due process protections are invoked); Leamer v. Fauver, 288 F.3d 532,545(3d Cir.2002)(state statute confers liberty interest in receiving psychological therapy that can lessen duration of sentence; therefore, due process protections are invoked); Neal v. Shimoda,131 F.3d 818,827(9th Cir.1997) (state statutes and regulations may confer liberty interest that invoke due process protections). Wolff v. McDonnell, 418 US 539,556-57(1974)(good-time credit accrued under state law is liberty interest protected by 14th Amendment's Due Process Clause). But cf. Sandin v. Conner, 515 US 472,484(1995)(due process liberty interests created by prison regulations limited to freedom from restraint which imposes atypical and significant hardship on inmate)..

In Sandin v. Conner, the Supreme Court announced a new test for analyzing state-created liberty interests, 515 US at 481-84 (overruling Hewitt v. Helms, 459 US 460 (1983). Prior to Sandin, the Supreme Court, in deciding whether a state-created liberty interest existed, had focused on whether the statute or regulation repeatedly used mandatory language and established "substantive predicates" for the officer's decisions. Hewitt, 459 US at 472. The Sandin Court criticized the Hewitt method for "shifting the focus of the liberty interest inquiry to one based on the language of a particular regulation, and not the nature of the deprivation, [which]

encouraged prisoner's to comb regulations in search of mandatory language on which to base entitlements." Sandin, 515 US at 481. The Court concluded that the Hewitt approach has two negative effects: (1) it creates a disincentive to the codification of procedures or an incentive to granting prison officials "standardless discretion," and (2) it forces federal courts to get involved in the day-to-day management of prisons. Id at 482-83. Sandin is not applicable in the analysis of those liberty interests that inhere in the Due Process Clause itself. See Id. Under Sandin, a prisoner must allege that a specific regulation or statute has created a liberty interest. See Id at 483-85; see, e.g., Taylor v. Rodriguez, 238 F.3d 188,195(2d 2001) (prisoner's sworn declaration of atypical hardship can form basis for protected liberty interest); Cochran v. Morris, 73 F.3d 1310, 1318 (4th Cir.1996)(allegation of specific and relevant prison regulation creating liberty interest is necessary element of procedural due process claims); Eason v. Thaler, 73 F.3d 1322, 1326 (5th Cir.1996)(court did not reach Sandin analysis because prisoner failed to identify any statute, regulation or internal policy directive as evidence of state-created liberty interest); Virgili v. Gilbert, 272 F.3d 391,395(6th Cir.2001)(prison regulation did not create liberty interest in freedom from strip search); Christiansen v. Clarke, 147 F.3d 655,657(8th Cir.1998)(inmate failed to make due process claim because he made no constitutional claim and merely sought restitution). Courts should provide due process protection to a state-created liberty interest only where the restriction on it or deprivation of it does one of two things: (1) creates an "atypical and significant hardship" on the prisoner by subjecting him to conditions different from those ordinarily experienced by large numbers of inmates serving their sentences in the customary fashion; Sandin, 515 US at 486 (prisoner's confinement in disciplinary segregation falls within expected parameter of sentence). Or (2) inevitably affects the duration of the prisoner's sentence. See Sandin, 515 US at

487; (no liberty interest because prisoner's confinement in disciplinary segregation will not inevitably affect duration of sentence); see e.g., Dominique v. Weld, 73 F.3d 1156,1160(1st Cir.1996)(prisoner's return to confinement from work release program by state did not inevitably affect the duration of sentence); Moorman v. Thalacker, 83F.3d 970,973(8th Cir.1996) (prisoner's have no liberty interest in good time credits absent state-created mandatory scheme that inevitably affects duration of sentence). But see, e.g., Madison v. Parker, 104 F.3d 765,769(5th Cir.1997)(prisoner' **have** liberty interest in good time credits under statutory scheme bestowing **mandatory** sentence reductions for good behavior because of effects of such credits on duration of sentence); Sweeney v. Parke, 113 F.3d 716,718(7th Cir.1997)(**same**). Courts have held that Sandin applies retroactively. See, e.g., Dominique v. Weld, supra at 1160 n.6 (Sandin applies retroactively). And that it [Sandin] eliminates some procedural due process protections formerly acknowledged under Hewitt v. Helms. In Sandin, the Supreme Court expressly overturned Hewitt's mandatory language ans substantive predicates methodology but, ostensibly, did not overturn any of the substantive outcomes reached under Hewitt. See Sandin, 515 US at 484 n. 5.

Once a court classifies an interest as protected, it must balance several factors in determining what procedural safeguards the Fourteenth Amendment requires: (1) the importance of the private interest affected; (2) the importance of the governmental interest affected, including the fiscal and administrative costs of the additional procedural requirements; and (3) the probable value of the additional procedural requirements, including reduction in the risk of erroneous deprivations under current procedures. See Mathews v. Eldridge, 424 US 319,335 (1976); see also Washington v. Harper, 494 US 210, 229 (1990); see, e.g., Sample v.

Diecks, 885 F.2d 1099,1115-16(3d Cir.1989)(due process violated when prison officials denied meaningful hearing on inmate's claim of being held beyond expiration of sentence because interest in avoiding wrongful detention outweighed administrative burden); Bazzetta v. McGinnis, 286 F.3d 311,323(6th Cir. 2002)(due process violated when inmate permanently deprived of visitation privileges without notice of hearing).

While Sandin diminished the number of liberty interests protected by procedural due process, many prior rulings remain unaffected. For example, the Supreme Court has held that the decision to administer antipsychotic drugs to prisoners without their consent need not be made by a judge, but should be made by a panel of medical experts after the prisoner receives notice, opportunity to be present at an adversarial hearing, and an opportunity to present and cross-examine witnesses. See Harper, 494 US 231, 235. See, e.g., Hogan v. Carter, 85 F.3d 1113, 1116(4th Cir. 1996)(state may involuntarily treat inmate who has serious mental illness with antipsychotic drugs only in emergency situations). In addition, if the government decides to transfer an unwilling prisoner from a prison to mental hospital, due process requires procedural safe guards including an adversarial hearing. See Vitek v. Jones, 445 US 480, 494-96 (1980). The prisoner in Vitek was transferred to a mental hospital after the prison psychiatrist determined the prisoner was suffering from a mental illness. See id. at 484. The Court held that the liberty interest and freedom from transfer to mental hospital, created by statute and prison practice, required the procedural safeguards of notice and an adversarial hearing. See id. at 489-90, 494-96. When an inmate has a right to a hearing, he or she also has a right to an opportunity to be actually present at the hearing. See U.S. v. Frierson, 208 F.3d 282,288 (1st Cir. 2000).

In Sandin, the Supreme Court indicated that statutory good time by which an inmate is entitled to time off his sentence conditioned on good behavior while in prison is an interest of "real substance." See Sandin v. Conner, 515 U.S. 472 (1995). Since the loss of good time will inevitably affect the duration of imprisonment its deprivation does seem to implicate a liberty interest. See, e.g., Hinebaugh v. Wiley, 137 F. Supp.-2d 69 (N.D. N.Y. 2001)(holding that the loss of good time credits implicated a liberty interest, and sufficiently challenged both the fact and duration of the inmate's sentence); Whitlock v. Johnson, 982 F. Supp. 615 (N.D. Ill. 1997), aff'd, 153 F.3d 380 (7th Cir. 1998). This is to be distinguished from the right to earn good time, which courts have held does not qualify as an atypical or significant hardship. See, e.g., Luken v. Scott, 71 F.3d 192 (5th Cir. 1995) (holding that denial of the opportunity to earn good time credits while incarcerated in administrative segregation was not atypical or significant hardship affording inmate due process protection); Abdul-Akbar v. Department of Corrections, 910 F. Supp. 986 (D. Del. 1995), judgment aff'd, 111 F.3d 125 (3d Cir. 1997) (no liberty in good time credits); Herring v. Singletary, 879 F. Supp. 1180 (N.D. Fla. 1995)(cancellation by state legislature of 1,540 days good time credits under a statute designed to end premature release of inmates due to prison overcrowding did not deprive inmate of due process because good time credits are not a property interest which mandates substantive due process); Coslett v. State, 697 So. 2d 61 (Ala. Crim. App. 1997)(court held that opportunity to earn good time credits in Alabama was a privilege; thus, the loss of inmate's ability to earn credits because he committed disciplinary infractions did not rise to the level of a liberty interest deprivation); State v. Mullins, 647 N.E.2d 676 (Ind. Ct. App. 3d Dist. 1995)(holding that depriving an inmate of good time credits for rules infractions does not rise to the level of a liberty interest); State v. Landgraf, 121 N.M. 445, 1996 -NMCA- 024, 913 P.2d 252 (Ct. App. 1996)(holding that while state statute gave prison officials the discretion to allocate good time credits to inmates, prison officials were under no duty to allocate inmate good time credits even though the lower court found that inmate had been a model prisoner). See also Sims v. Maddock, 2 Fed. Appx. 767 (9th Cir. 2001), cert. denied, 122 S. Ct. 137, 151 L. Ed. 2d 89 (U.S. 2001)(holding that inmate did not have a liberty interest at stake in the loss of 150 days of good time credit, where he was serving a life plus three-year sentence).

THE SUPREME COURT RULED THAT A LEGISLATIVE
ATTEMPT TO DEPRIVE INMATES OF EARNED GOOD
TIME CREDITS RAN AFOUL OF THE EX POST FACTO
PROHIBITION OF THE CONSTITUTION.

(In Lynce v. Mathis, 519 U.S. 433, 117 S. Ct. 891, 137 L. Ed. 2d 63 (1997), the supreme Court considered whether a Florida statute, which retroactively canceled the award of good-time credits, violated the Ex Post Facto Clause of the Constitution. The plaintiff, a Florida state prisoner who was convicted of attempted murder, was granted early release by the florida Department of Corrections after earning a sufficient number of good time credits. The early release was designed to alleviate prison overcrowding. Shortly thereafter, the florida legislature passed a statute retroactively canceling the award of good time credits to prisoners convicted of murder or attempted murder. Consequently, the plaintiff was rearrested and returned to prison. He filed a writ of habeas corpus claiming the statute violated the Ex Post Facto Clause of the Constitution. The court, in a majority opinion written by Justice Stevens, held that the operation of the statute disadvantaged the plaintiff by increasing his sentence and therefore was unconstitutional).

THE EX POST FACTO CLAUSE

"Forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occured. Critical to relief under the Ex Post Facto Clause is not an individuals right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases the punishment beyond what was proscribed when the crime was consummated. Thus, even if a statute merely alters penal provisions accorded by grace of legislature, it violates the clause if it is both retrospective and more onerous than the law in effect on the date of the offense." Weaver v. Graham, 450 U.S. 24, 30-31 (1981) emphasis added, as quoted in Lustgarden v. Gunter, 779 F. Supp. 500, (D.Colo.1991).

A new administrative interpretation which subjects the prisoner already sentenced to more severe punishment has the same effect as a new statute lengthening his present term. Lindsey v. Washington, 301 U.S. 397 (1937).

"The rule is correctly stated in 16A C.J.S. Constitutional Law §444, as follows: "where an allowance for good behavior is regarded as a right, a statute which may have the effect of depriving a person of such right is Ex Post Facto; but the rule is otherwise where a shortened term for good behavior is regarded as a matter of grace, and not of right." Graham v. Thompson, 246 F2d. 805 (1957)(10th Circ.).

"[s]tatutes affecting sustantive rights and liabilities are presumed to have only prospective effect." Quoting Bennet v. New Jersey, 470 U.S. 632 at 639 (1985).

The Court stated in Lewis v. Commonwealth, 329 Mass. 445 (1952), that "The operational words of section 129 are 'shall be entitled to have the term of imprisonment reduced by a deduction from the maximum term for which he may be held under his sentence *** and 'shall be entitled to a further deduction from the maximum term for which he may be held under his sentence ***. These words effect an actual reduction of the term of the sentence. Opinion of the Justices, 13 Gray 618. The prisoner is 'entitled' to that reduction." Lewis Supra at 451.

The Court stated in Murphy v. Commonwealth, 172 Mass. 264 (1899), that "...the legislature, under the guise of laws relating to procedure ...or penal administration, cannot take away or interfere with any substantial right or privilege which was secured to a party by the law as it was when the offense was committed. Kring v. Missouri, 107 US 232; Thompson v. Utah, 170 US 343; Medley Petitioner, 134 US 160. To deprive him in any manner of such right or privilege would be to increase the penalty." Murphy Supra at 269-270. The Court when on to state "to have taken away that right of deduction for good behavior, or to have interfered with it to the disadvantage of the convict, would have been, in effect, to lengthen the sentence which was provided by law for the offense at the time when it was committed; and a statute which did that clearly would have been ex post facto. See Opinion of the Justices, 13 Gray 618.". Murphy Supra at 271-272.

In the case at bar, the Petitioner has a vested right to have the maximum term of his sentences reduced by good conduct credits, the law is clear, any interference with this vested right, runs afoul of the Ex Post Facto Clause of both the United States and the Massachusetts Constitution.

EQUAL PROTECTION

No State shall deprive any person of the equal protection of laws. The Equal Protection Clause essentially requires that all persons similarly situated be treated alike.

The laws in Massachusetts that govern deductions of good conduct credits and the calculation of prison sentences, EQUALLY applies to both concurrent and consecutive prison sentences.

When the Respondent calculates multiple consecutive sentences for the sole purpose of deducting good time credits, the Respondent aggregates all the sentences to determine the maximum term from which such good time credits are deducted from. This method of calculating sentences and deducting credits is the correct method pursuant to M.G.L.c. 127 §§ 129, 129C, 129D. (See attached exhibit #1 and #2).

To the contrary, when the Respondent calculates multiple concurrent sentences for the sole purpose of deducting good time credits, the Respondent refuses to aggregate the sentences to determine the maximum term from which such good time credits should be deducted from. As this is the case at bar, these sentences are treated seperately.

This method of calculating concurrent sentences is illegal and runs afoul of the Equal Protection Clause, it is also contrary to the Massachusetts case law that specifically sets forth the way sentences in this Commonwealth shall be calculated for the sole purpose of deducting good time credits; Diafario v. Commissioner, 371 Mass. 545, (1976); Burno v. Commissioner, 399 Mass. 111, (1987); re Sumpter, 46 Mass.App.Ct. 251, (1999); Crooker v. Chairman of Mass.Parole Board, 38 Mass.App.Ct. 915, (1995); Parzyck v. Dubois, 2 Mass.Law.Rptr. 457, 1994 WL 879719.

EXHIBITS EXPLAINED

After a brief explanation of the following exhibits, the Court will clearly see, that the respondents interpretation of the Massachusetts laws that govern Good Conduct Deductions is clearly unconstitutional, as it runs afoul of the Equal Protection Clause, of both the United States And Massachusetts Constitutions. This is due to the fact that the respondent deducts Good Conduct Credits differently for prisoners serving concurrent and consecutive terms of imprisonment, even though the laws that govern the Credits apply EQUALLY to both concurrent and consecutive terms. The respondent is creating two classes: individuals serving "concurrent" sentences, and individuals serving "consecutive" sentences, when in fact, there should only be one class of individuals under the laws that govern Good Conduct Credits.

Exhibits numbered 1, 1A & 2, are attributable to a prisoner that is serving "consecutive" sentences, whereas exhibits numbered 3, 3A & 4, are attributable to the petitioner who is serving "concurrent" sentences.

Exhibits # 1, 1A, 2, & 2A, is a form required by 103 CMR 410.06 (6), of which is issued pursuant to the statutory authority of the laws that govern Good Conduct Deductions; M.G.L.c. 127 §§ 129, 129C & 129D. This form list all the sentences a prisoner is serving and it is titled "INMATE SENTENCE LISTING".

After a brief examination of Exhibits # 1, 1A & 2, the Court will clearly see that "consecutive" sentences are combined to determine a maximum term from which all Good Conduct Credits are deducted from, & "concurrent" sentences are not, see exhibits 3, 3A & 4.

On exhibit #1, the Court will notice that Sentence 1 & 2 have an offense date of 9-29-92, and are pre-Truth in Sentencing Act. These two sentences are awarded 1500 Days of good Conduct Credits under M.G.L.c. 127 § 129; see (max date 3-12-06 minus GCD date 2-1-02, which equals 1500 days). The following Sentence #3 has an offense date of 2-26-96, and is post-Truth in Sentencing Act.

On exhibit #1A, of which is the second page to exhibit #1, to the right of the page, the Court will see "combined dates as of..", the "original" maximum date is 3-13-2010 and the "original" GCD date is 2-2-2006, the difference of 1500 days. The 1500 days of credits attributed to sentences 1 & 2 (pre-Truth in Sentencing Act) and that were issued under M.G.L.c. 127 § 129, have been deducted from the aggregate maximum term of all 3 sentences, even though Sentence #3, which is post-Truth in Sentencing Act, is included. This is the way credits issued under M.G.L.c. 127 §§ 129, 129C & 129D, should be deducted.

A close look at exhibit #3 & 3A, of which is a listing of the petitioners concurrent sentences, the Court will notice that the 1500 days of Good Conduct Credits that the petitioner is entitled to for sentences #2 & #3, are not being deducted from the combined maximum term as listed on exhibit 3A, under "combined dates as of.." at the bottom right hand part of the page. This is clearly contrary to the way the above consecutive sentences on exhibits #1 & 1A are deducted. The "GCD" date on exhibit 3A is left blank, whereas the "GCD" date on exhibit #1A is not, clearly showing the 1500 days of Good Conduct days were deducted. The laws that govern deductions from sentences in the Commonwealth of Massachusetts, apply equally to concurrent & consecutive terms of imprisonment, therefore, any difference in the way the two are

calculated, violates the Equal Protection Clause of both the United States and Massachusetts Constitutions.

Exhibits #2 & #4 is a form required by 103 CMR 411, Attach.III, of which is issued pursuant to the statutory authority of the laws that govern Good Conduct Credits; M.G.L.c. 127 §§ 129, 129C and 129D. This form lists all the governing dates from which to deduct credits from.

On exhibit #2, which is attributable to the prisoner serving consecutive sentences and is the same sentences as exhibit #1 & 1A, the Court will notice that the 'Effective Date of Sentence' is 3-13-96 and the Maximum Governing Release Date is 3-13-10, the difference of exactly 14 years. This clearly shows that the three sentences from exhibit #1 were combined into one sentence with an aggregate maximum term of 14 years. On the "Good Conduct" line, you will notice the number '1500', this represents 1500 days of Good Conduct Credits issued under M.G.L.c. 127 § 129 and attributable to the pre-Truth in Sentencing Act sentences #1 & #2. On the "129D" line, you will notice the number '165', this represents 165 days of Good Conduct Credits issued under M.G.L.c. 127 § 129D. These combined Good Conduct Credits, of which equal 1665 days, are then deducted from the governing release date of 3-13-10, thereby producing a revised release date of 7-9-05 (bottom of page). All the Sentences, Post and Pre, Truth in Sentencing Act, were combined into one sentence, then all the Good Conduct Credits were deducted from the combined maximum term. This is the correct method of deducting credits issued under M.G.L.c.127 §§ 129, 129C and 129D. A close look at exhibit #4, which is for concurrent sentences, the Court will notice "0" on the Good Conduct line, and the

word "none" in the "GCD" box under the heading "GOVERNING RELEASE DATES". The 1500 days of Good Conduct Credits that the petitioner is entitled to under M.G.L.c. 127 § 129, is not being included in any of the calculations of his Good Conduct Deductions.

Here we have two persons similarly situated and the laws that govern deductions from their sentences equally apply to both of them, yet their deductions from their sentences are being deducted in a different manner. This is clearly unconstitutional. The respondents erroneous calculation of the petitioners sentences is depriving him of his right to be at liberty, of which he is justly entitled to under the laws of Massachusetts that govern the way sentences are to be calculated for the sole purpose of deducting Good Conduct Credits.

"The concepts of equal protection of the laws and due process both stem from the american ideal of fairness, and are not mutually exclusive, nor are the concepts always interchangeable, in that equal protection of the laws is a more explicit safeguard of prohibited unfairness than due process of law, but a discrimination may never the less be so unjustifiable as to be violative of due process." Bolling v. Sharpe, 347 U.S. 497 (1954).

"The equal protection of the laws means subjection to equal laws, applying alike to all in the same situation." Southern R. Co. v. Greene, 266 U.S. 400 (1910). "Circumstances of each case govern in determining whether there has been denial of equal protection." (1964), Griffin v. County School Board, 377 U.S. 218.

The respondent cannot deduct Goodtime Credits differently for prisoners serving concurrent sentences , than prisoners serving consecutive sentences, to do so, is a violation of the equal protection of laws.

Inmate Sentence Listing

W55293 PRATER, PAUL

eport Date:2003 0808 15:03:47

EXHIBIT #7

Sentence Unit: A

Sent #: 1 Statute: 266 18

Dwell; B & E dt w/i to com. Fel n/p fear

Off. Date: 19920929
Sent. Type: State Prison
Imposed: 19960912
Invoked: 19990218 6Y TO 10Y
Jail Credit: 1072
Effective: 19960313
Court: SUFFOLK SUPERIOR COURT
Docket: 92-11786-002

PE: 19980312
Min: 20020312
Max: 20060312
Gcd: 20020201

Sent #: 2 Statute: 265 20 161

UNARMED ASSAULT

Off. Date: 19920929
Sent. Type: State Prison
Imposed: 19960912
Invoked: 19990218 6Y TO 10Y
Jail Credit: 1072
Effective: 19960313
Court: SUFFOLK SUPERIOR COURT
Docket: 92-11786-003

PE: 20000312
Min: 20020312
Max: 20060312
Gcd: 20020201

Sent #: 3 Statute: 265 17 140

ARMED ROBBERY

Off. Date: 19960226
Sent. Type: State Prison
Imposed: 20000217
Invoked: 20000217 4Y TO 4Y 1D
Jail Credit: 0
Effective: F&A 1
Court: SUFFOLK SUPERIOR COURT
Docket: 96-10686

PE:
Min:
Max:
Gcd:

Statutory good Time Restrictions.

| Paroled | Revoked | Returned | Escaped | Returned |
|---|---|---|---|---|

Inmate Sentence Listing

W55293 PRATER, PAUL

Report Date:2003 0808 15:03:47

EXHIBIT

Combined dates as of 20030807 04:54

| | |
|---|---|
| Time on parole: | 0 |
| Dead time(parole): | 0 |
| Dead time (escape): | 0 |
| Earned time: | 172.50 |
| Forfeitures: | .0 |
| Restorations: | .0 |

| | Original | Revised | Adjusted |
|---|---|---|---|
| PE Date : | 20020312 | | 20010920 |
| Minimum : | 20060312 | | 20050920 |
| Maximum : | 20100313 | | 20090921 |
| GCD Date: | 20060202 | | 20050813 |



Total aggregate



EXHIBIT #2

S.B.C.C.

# "Deductions From Sentence" Summary Sheet

Needs Processing

Cleared NA

Date: 11-07-02

Prepared by: Jewel Healy

Inmate: PRATER, Paul

Number: W55293

Effective Date of Sentence: 03-13-96

Period Beginning: 10-01 (Date)

Period Ending: 10-02 (Date)

## Governing Release Dates

| Parole | Minimum | Maximum | G.C.D. |
|---|---|---|---|
| 03-12-02 | 03-12-06 | 03-13-10 | 02-02-06 |

Total Deductions Allowed in Computing Adjusted Release Dates from Governing Release Dates:

Good Conduct 1500 Camp 0

129 D 165 Blood 0

Total Good Conduct Forfeitures: 45 (not to be included in computation)

Since Last Requested - Dated 10-04-01

Camp: 0

Blood: 0

## Adjusted Release Date

Includes Camp time, blood time, 129 D

| Parole | Minimum | Maximum | G.C.D. |
|---|---|---|---|
| 09-28-01 | 09-28-05 | 09-29-09 | 08-21-05 |

## 129 D (Only)

| Program/Activity | Institution of Participation | Dates of Participation | # Recommended Deductions |
|---|---|---|---|
| SEE REVERSE SIDE | | | |

NOTICE MAILED
DATE 12-02-02
INITIALS JH

## Revised Release Dates

| Parole | Minimum | Maximum | G.C.D. |
|---|---|---|---|
| | 08-16.5-05 | 08-17.5-09 | 07-09.5-05 W/LGT= 08-23.5-05 |

Total Numbers of Days Recommended: 42.5

Edward Ficco/cm 11-8-02

Superintendent or Designee Date

Total Number of Days Granted: 42.5

Michael T. Maloney @ 11-22-02

Commissioner Date

EXHIBIT #3

Inmate Sentence Listing

W58521 RAMPINO,CHARLES

Report Date:2003 0513 08:42:45

Sentence Unit: A

---

Sent #: 1 Statute: 265 19 150

UNARMED ROBBERY

| | | | | |
|---|---|---|---|---|
| Off. Date: | 19940714 | | | |
| Sent. Type: | State Prison | | PE: | 20011129 |
| Imposed: | 19950502 | | Min: | 20011129 |
| Invoked: | 19950502 | 7Y TO 12Y | Max: | 20061129 |
| Jail Credit: | 153 | | Gcd: | |
| Effective: | 19941130 | | | |
| Court: | SUFFOLK SUPERIOR COURT | | | |
| Docket: | 94-11973-001 | | | |

Statutory good Time Restrictions.

---

Sent #: 2 Statute: 265 15A 171

A&B BY MEANS OF D.W.

| | | | | |
|---|---|---|---|---|
| Off. Date: | 19940324 | | | |
| Sent. Type: | State Prison | | PE: | 19980329 |
| Imposed: | 19950502 | | Min: | 19991129 |
| Invoked: | 19950502 | 5Y TO 10Y | Max: | 20041129 |
| Jail Credit: | 153 | | Gcd: | 20001021 |
| Effective: | 19941130 | | | |
| Court: | SUFFOLK SUPERIOR COURT | | | |
| Docket: | 94-11974-001 | | | |

---

Sent #: 3 Statute: CL A 94C 32 881

CLASS A

| | | | | |
|---|---|---|---|---|
| Off. Date: | 20010427 | | | |
| Sent. Type: | SUFFOLK | | PE: | |
| Imposed: | 20011012 | | Min: | |
| Invoked: | 20011012 | 1D | Max: | 20011012 |
| Jail Credit: | 0 | | Gcd: | |
| Effective: | 20011012 | | | |
| Court: | WEST ROXBURY DC | | | |
| Docket: | 0106CR001260(CT1 | | | |

Statutory good Time Restrictions.

Inmate Sentence Listing

W58521 RAMPINO, CHARLES

Report Date: 2003 0513 08:42:45

EXHIBIT #3A

Sentence Unit: A

Sent #: 4 Statute: 94C 32J 872

Cont. Sub. on/near School Property

Off. Date: 20010427
Sent. Type: SUFFOLK
Imposed: 20011012
Invoked: 20011012 TO 2Y
Jail Credit: 0
Effective: 20011012
Court: WEST ROXBURY DC
Docket: 0106CR001260(CT2

PE: 20031011
Min:
Max: 20031011
Gcd:

2 Years Probation Restrictions.
2 Years Work Release Restrictions.
2 Years Parole Restrictions.

2 Years Earn Good Time Restrictions.
Statutory good Time Restrictions.
2 Years Camp Time Restrictions.
2 Years Furlough Restrictions.

| Paroled | Revoked | Returned | Escaped | Returned |
|---|---|---|---|---|

Combined dates as of 20030507 05:08

Time on parole: 0
Dead time(parole): 0
Dead time (escape): 0
Earned time: 225.00
Forfeitures: .0
Restorations: .0

| | Original | Revised | Adjusted |
|---|---|---|---|
| PE Date : | 20031011 | | 20031011 |
| Minimum : | 20031011 | | 20031011 |
| Maximum : | 20061129 | | 20060418 |
| GCD Date: | | | |

EXHIBIT #4

NOTICE MAILED DEC 04 2001

S.D.P. Cl
Needs
Processin
Cleared ☐
NA ☐

DATE 11-20-01
PREPARED BY G. Costello

"DEDUCTIONS FROM SENTENCE" SUMMARY SHEET ☆ W58521 7-1

GOVERNING RELEASE DATES

| Parole | Minimum | Maximum | G.C.D. |
|---|---|---|---|
| 10-12-03 | 11-29-01 | 11-29-06 | NONE |

Inmate: & No. RAMPINO, Charles
Effective Date of Sentence: 11-30-94
Period Beginning: 1-1-91
Dates
Ending: 9-30-01
Dates

Total Deductions Allowed in Computing Adjusted Released Dates from Governing Release Dates:

Good Conduct 0
129 D 167.5
Camp 30
Blood 0
Total Good Conduct Forfeitures:
(Not to be included in Computation)

Since Last Request-Dated 12-27-00
Camp: 0
Blood: 0

Adjusted Release Date
Includes Camp Time, Blood Time, 129 D Time

| Parole | Minimum | Maximum | G.C.D. |
|---|---|---|---|
| 10-12-03 | — | 5-15-06 | NONE |

129 D (only)

| Program/Activity | Inst. of Participation | Dates of Participation | # Recommended Deductions |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | SEE OTHER SIDE | |
| 5. | | | |
| 6. | | | |

26 200

(Continued on Other Side)

REVISED RELEASE DATES

| Parole | Minimum | Maximum | G.C.D. |
|---|---|---|---|
| 10-12-03 | — | 4-23-06 | NONE |

Total Number of Days Recommended 22.5
Gloria Costello 11-20-01
Superintendent or Designee Date
Total Number of Days Granted: 22.5
Michael T. Maloney 11-28-01
Commissioner Date

Petitioner's Sentences Aggregated

Sentence #1 (No. 94-11974-001)
Term: 5-10 years* [1]
S.E.: November 30, 1994*
Max: November 29, 2004*

Sentence #2 (No. 94-11973-001)

Term: 7-12 years
S.E.: November 30, 1994
Max: November 29, 2006

Aggregation of Sentences 1 & 2:

S.E.: November 30, 1994
Max: November 29, 2006
Good time: 1500 days*
G.C.D.: October 21, 2002*
Earned : 222.5 days*
Adj.GCD : March 13, 2002

---

[1]*Definitions:
Term= length of sentence
S.E.= Sentence Effective Date; Max = Maximum release date
Good time= Statutory goodtime G.L c. 127 §129
Earned= Earned good time G.L. c. 127§ 129C,129D
G.C.D.= Good Conduct Discharge date, date arrived at by deducting Statutory good time and Earned good time.

Concerning aggregation, the aggregate term runs from the effective date of the sentence which is effective first, in this case both sentences became effective on November 30, 1994, to the maximum date of the sentence which expires latest (sentence #2 expires on November 29, 2006). There is no dispute that Sentence #1 therefore receives 1500 days of statutory good time and Petitioner has earned 222.5 days of earned good time. Therefore, after deducting 1722 days of good time from the maximum date of November 29, 2006, one arrives at a date of March 13,2002, as the adjusted GCD date.

SENTENCING CHART
MULTIPLE CONCURRENT TERMS
(5-10 YEARS & 7-12 YEARS)

AGGREGATE DATES

EFFECTIVE DATE : 11-30-94
MINIMUM DATE : 11-29-99
MAXIMUM DATE : 11-29-06
TOTAL CREDITS : 1725
DISCHARGE DATE : 03-10-02

CONVICTED UNDER
(5-10 YRS)
M.G.L.c.
265 § 15A*
(7-12 YRS)
M.G.L.c.
265 § 19 *
SENTENCED UNDER
G.L.c. 279 §24*
AGGREGATE
TERM OF IMPRISONMENT
MINIMUM TERM
5 years
MAXIMUM TERM
12 years
M.G.L.c.
127 § 129*
1500
DAYS
M.G.L.c.
127 § 129C*
30
DAYS
M.G.L.c.
127 § 129D*
225
DAYS

*

M.G.L. c.265 § 15A; ASSAULT BATTERY D/W (CRIMES AND PUNISHMENT)
M.G.L. c.265 § 19 ; ROBBERY (CRIMES AND PUNISHMENT)
M.G.L. c.279 § 24 ; INDETERMINATE SENTENCING (JUDGMENT & EXECUTION)
M.G.L. c.127 § 129; GOOD CONDUCT (PERMITS TO BE AT LIBERTY)
M.G.L. c.127 §129C; GOOD CONDUCT (PERMITS TO BE AT LIBERTY)
M.G.L. c.127 §129D; GOOD CONDUCT (PERMITS TO BE AT LIBERTY)

THE FOLLOWING MASSACHUSETTS CASE LAW DETERMINED THAT THE LANGUAGE IN M.G.L. C. 127 §§ 129,129C & 129D, CLEARLY INDICATES THE FOLLOWING:

1. DIAFARIO & RE SUMPTER; (MANDATES AGGREGATION OF MULTIPLE SENTENCES TO DETERMINE A SINGLE/MAXIMUM TERMINATION DATE, FROM WHICH ALL CREDITS THAT ARE ISSUED BE DEDUCTED FROM).
2. BURNO & HENNESSY; ("MAXIMUM TERM FOR WICH A [PRISONER] MAY BE HELD UNDER HIS SENTENCE" REFERS TO MAXIMUM SENTENCE IMPOSED ON A PRISONER).
3. CROOKER; (THAT THE STATUTES APPLY EQUALLY TO BOTH CONCURRENT & CONSECUTIVE SENTENCES, SENTENCES WITH AND WITH AND WITHOUT STATUTORY GOODTIME MUST BE AGGREGATED, CITING DIAFARIO).

CONCLUSION

The Petitioner has stated a cognizable federal claim upon which this Honorable Court can and should grant relief. The Petition for writ of habeas corpus should be sustained and a hearing should be scheduled to determine the facts.

Respectfully submitted,

CHARLES RAMBINO PRO SE

Dated 3-16-05